We'll hear argument next in Case 23-677, Royal Canin v. Wullschleger. Ms. Wellington. Mr. Chief Justice, and may it please the Court, the Eighth Circuit's decision below is an extreme outlier. It conflicts with the text and structure of Section 1367 and with more than a century of precedent. Chief Justice Marshall held in Molan v. Torrance in 1824 that in a diversity case, a federal court's jurisdiction, once vested, cannot be divested by subsequent events. The Court extended that reasoning to removal actions in Kirby v. American Soda in 1904. In 1938, this Court held in St. Paul-Mercury that if the plaintiff, after removal, amends his pleadings, this does not deprive the district court of jurisdiction because the defendant's statutory right to removal should not be subject to the plaintiff's caprice. The second Justice Marshall confirmed that conclusion in Carnegie Mellon v. Coehill in 1988, and Justice Scalia concurred in Rockwell in 2007. Respondents asked this Court to upset that settled interpretation, claiming that it conflicts with the text of Section 1367. But Congress codified this Court's longstanding precedent in the text of Section 1367 itself, making clear that if the federal court has original jurisdiction, it shall continue to have supplemental jurisdiction unless Congress expressly provided otherwise. Respondents cannot cite a single decision of this Court, a single decision of a court of appeals outside of the Eighth Circuit, or a single treatise that supports their position. Respondents realized how weak their case is and instead asked the Court to decide something else, whether Grable should be overruled, and if not, whether Grable's requirements were met. This Court did not grant certiorari on either question. Grable, as settled law in the Eighth Circuit, correctly applied it here. The Court should affirm its longstanding precedent and reverse the decision below. I welcome the Court's questions. You mentioned Section 1367. Could you spend a few minutes on your argument as to how it disposes of, supports your argument? Certainly, Your Honor. So the text of Section 1367 states that there is supplemental jurisdiction unless Congress has expressly provided otherwise. And the text of Section 1367 does not say that when a plaintiff amends the complaint to delete the federal question, there is no longer supplemental jurisdiction. And that's exactly the interpretive approach that this Court adopted in Exxon Mobil against Alipata, where the Court was trying to figure out what does Section 1367 say about Rule 23 and plaintiffs in class actions. And the Court looked at Section 1367, said it doesn't say anything about Rule 23, and that means that there is supplemental jurisdiction. There are also some important structural inferences here. So Section 1367c3 makes clear that where the district court has dismissed all claims over which it has original jurisdiction, it can continue to exercise supplemental jurisdiction. And that really disposes of the argument that there has to be an ongoing federal question in the case in order for supplemental jurisdiction to be warranted. And Congress didn't intend that here. So do you think, Ms. Wellington, that let's say this wasn't a removal case. Let's say this was an original case and it was brought in federal court, and then the plaintiff took out the federal claim, leaving only state claims. Is there supplemental jurisdiction there? So this Court has treated these two situations differently, and Justice Scalia explained why in Rockwell. So there is a concern in Rockwell that when a plaintiff goes into federal court, pleads a federal question, and then immediately or subsequently drops it, that they're trying to plead their way into federal court. So forgetting what the reason for that is, you do agree with that rule, that once I file a suit in federal court as an original matter, then take out the federal claims, leaving only state law claims. There's nothing at that point for the federal court to do. It's not a doctrine of discretion anymore. The federal court has to dismiss. Is that correct? That is how we have asked this Court to read Rockwell. The U.S. Chamber of Commerce brief, you know, yes. I just want to make sure. That is our view. So if that's the case, I don't think that your arguments from 1367 can be right because your arguments from 1367 would suggest the opposite result in the case that I gave. In other words, it's very hard to read 1367 as imposing some kind of distinction between original cases and removed cases. So I agree, Your Honor, that there is no distinction in the text of 1367 itself. This Court could revisit its decision in Rockwell or limit it to the FCA context. We haven't asked the Court to do that because we think that we win on the text here. We think if you just – I guess what it suggests to me, though, is if you were willing to say, look, the Rockwell understanding of original cases is settled, we're not contesting that, then I think your arguments from 1367 go away because 1367 just doesn't create the kind of distinction that you're asking us to create. So either you lose as to removed cases too or these arguments from the text are just not going to get us to your result. So we disagree, Your Honor, with your interpretation of the text of Section 1367. We think Congress has made clear that there is supplemental jurisdiction unless Congress has expressly provided. Otherwise, it hasn't done that. And I think it's very important to consider how Congress came to write Section 1367. It was in response to Finley where this Court took an extremely narrow view of pendant claim and pendant party jurisdiction, pendant party jurisdiction in particular, and Congress said, no, that's not what we want. We want a broader view of pendant claim and pendant party jurisdiction, and that's why they wrote this very broad statute here. And it would be very strange to conclude that Congress intended to abrogate Cohill. It was decided just two years before it enacted. That's the point, isn't it? Sorry, go ahead. That's the point, isn't it? I can't get over the fact that what Congress did in 1367 was address the questions that had been in the Court. The first one was the diversity issue under St. Paul, and it agreed with the Court. It disagreed with the Court on pendant and supplemental jurisdiction, and it wrote a statute to address that. And yet it knew from Cohill that we had said that if a plaintiff dismisses an action, that potentially we go back to the original amendment, and it didn't do what it did for diversity. It wrote it to say only when the district court dismisses the federal claims do you retain supplemental jurisdiction. That, to me, is the statute. They had all our case law. They addressed one thing they agreed with. They disagreed with another, and they disagreed with the third by not adopting what it did with diversity. So two responses, Your Honor. First, Section 3C2 does expressly address this Cohill situation. It says the district courts may decline to exercise supplemental jurisdiction when the state law claim substantially predominates. No, when the district court has dismissed all claims. It doesn't say when the plaintiff has dismissed all claims. So I agree. That's C3. And when the district court dismisses all federal claims, the party still has a right to appeal, correct? That's correct. But when the district court doesn't do that in a diverse action, then that, because the claim has disappeared, there's no appeal for anybody, correct? I think, Your Honor, it depends on the case. I think there could still be an appeal in a diversity case where the district court dismisses a claim and the plaintiff says you shouldn't have dismissed that claim. No, but that's because they're there because of the diversity provision of the statute. Can I just understand your argument about whether or not an amendment can affect federal question jurisdiction? So setting aside diversity for a second, we're in federal question land. The case is filed in federal court, and the plaintiff goes through the first couple weeks and then says, you know what, I'm dropping my federal claims because it originally brought a complaint that had federal and state claims. Does that affect jurisdiction in your view or not? And this is a case originally brought in federal court. Originally brought in federal court. And the plaintiff amends and takes out the federal claims. Can the court proceed? Can it decide through supplemental jurisdiction or whatnot to continue on with the case? So this court suggested in Rockwell that the answer to that would be no, you would not continue in that case. Okay, so next question. The case is brought in state court, and it has federal and state claims. And before the defendant has the ability to remove, the plaintiff says, oops, I didn't mean to bring the federal claims. I'm dropping them. So no removal action yet or motion yet. Can it be still removed? Is there any basis for federal jurisdiction in that situation? No, Your Honor. All right. So it seems to me then your argument comes down to the impact of removal. Because somehow, even though in a situation in which the plaintiff amends if it was brought originally in federal court, or amends if it's brought originally in state court, those have an impact, you say, on federal question jurisdiction. Somehow, if the defendant removes before the plaintiff can drop the federal claims, you say no impact on federal question jurisdiction. Is that right? That's correct. Why? So this court explained in St. Paul Mercury that once you've removed to federal court, there is a removal statute, and the defendants have a right to remove. But the removal statute doesn't say, as I think Justice Sotomayor was trying to get at, anything about what happens to jurisdiction. I thought the removal statute was really just giving the defendant the ability to bring this action into federal court. It doesn't say anything about whether or not the federal court can be divested of jurisdiction once it's there. And I don't understand why the federal court can be divested of jurisdiction if it starts in federal court, because the plaintiff brought it there, but can't be divested of jurisdiction if it comes to federal court because the defendant brought it there. And just to be clear, the rule that we're asking for and the rule that this court has applied for 100 years is that it's a matter of discretion once you get to federal court on removal. It's up to the district court judge.  But I guess why does it make a difference as to how this case landed in federal court as to whether or not the federal judge can be divested of his jurisdiction? That's what your argument seems to turn on, and I don't know why that's the case. And this court addressed that in St. Paul Mercury and said that the defendant's right to remove should not be subject to the plaintiff's caprice. Congress gave defendants rights in the situation when the case gets to federal court on removal. That's different than when a case is originally... It changes the scope of jurisdiction. The removal right carries with it the ability to affect the jurisdiction of the court, is what you're saying. That's what this court has long held in cases like St. Paul Mercury and Coe Hill. The court recognized that in Rockwell. It also recognized it in cases like Carlsbad, where this court was talking about Coe Hill remands and determined that they were not mandatory, that they were a matter of discretion for the district court. And I agree, Your Honor, that in most cases the outcome's going to be the same. When you get to federal court in a removal case, you drop your federal claim immediately. Most of the time you're going to go right back to state court. It's going to be the same outcome. Where it matters are cases like this one where the case has been going on for almost two years when they amend their claims. We've cited other cases where it's been pending in federal court for a long time and right before an adverse decision. So that's on page 16 of our yellow brief. Right before an adverse decision, the plaintiff amends their complaint to try to get back to state court. And in that situation, district courts have said, well, I'm going to balance this attempt at gamesmanship with other considerations like Counsel, can I interrupt you there? I mean, St. Paul Mercury is a little bit different because it's diversity, and there's always been a problem, you know, when I used to teach diversity jurisdiction, in the amount of controversy in figuring out how to value it. And you're not capped to the damages that you claim, and so there wasn't a real change there. And, you know, Coe Hill, okay, it's helpful, but it's really about a different point. It's about dismissal versus remand. I think the best thing for you are all these court of appeals cases. I mean, I have a lot of trouble with the textual argument for the reasons Justice Kagan is saying, but, I mean, it does give me some pause to say, well, all these courts of appeals have thought this was okay, and there is that footnote in Rockwell. But it's not quite the old soil principle because the old soil principle requires you to be able to hang your hat on something in the statute and say this is what brought along the old soil with it. So you cite Taggart and the old soil principle, but what are you attaching it to, as opposed to just some sort of, like, free-floating, everyone thought we could do this? So we totally agree, Your Honor. It has to be important that for decades and decades and decades, every court of appeals has gone the same way. We disagree, Your Honor, that Coe Hill didn't address this question. It does say that when a federal law claim is eliminated, at an early stage of the litigation, the district court has a powerful reason to choose It's dicta. It's dicta. Just go with my old soil question. So I think it is important here that Congress whole swath took parts of Gibbs and Coe Hill and the lower court cases prior to the enactment of the statute. So Section A, as well as Section C, 2, and 3 are word for word from Gibbs. The top part of Section C, the district court may decline to exercise supplemental jurisdiction, that's drawn directly from Coe Hill. And C-1, where it talks about the claim raises a novel or complex issue of state law, that comes from 1980s court of appeals decisions that took that into account when determining whether to exercise supplemental jurisdiction. So this entails What? Your briefing obviously suggests, at least at the outset, you don't think Grable has much to do in this case. And your friend on the other side obviously disagrees. But I wonder why it doesn't. I mean, your reading, I think, assumes the correctness of your position under 1367 that this complaint is one over which the district court would have original jurisdiction. And your friend, I think, has concluded that depends upon whether Grable is correct. And so why isn't it, why doesn't it depend upon Grable? So this court can decide jurisdictional issues in any order. That's what it held in Sinochem. We agree that there has to be an adjudication of the Grable question in order to get to the ultimate remedy in this case. But that's not what we're asking this court to decide. So we don't think the court has to decide the issue. If the court wants to decide the issue, we think there plainly was jurisdiction based on the original complaint. The original complaint repeatedly claims that there are violations of the Food, Drug, and Cosmetic Act. And then in paragraphs 136 and 137 of the complaint asks for an injunction requiring ongoing compliance with federal law. Well, the original complaint, but not the removed complaint. In other words, not the complaint with all the federal things stripped out of it. In that situation, if that's the one you look at, then Grable is critical to your success, I think. Just to be clear, so the complaint at the time of removal had a federal claim, you know, that's our position. I think Your Honor is talking about supplemental jurisdiction. Yes, of course. And this court has long held that you don't have to have a federal question at all stages of the case in order to exercise supplemental jurisdiction. That's exactly what the court held in Rosado, where the original federal claim became moot. And this court said that the three-judge district court could continue to go on and decide the ancillary claims, even though it didn't have original jurisdiction, because you don't have to have jurisdiction over the original federal claim through all proceedings. In 2007, in Rockwell, in footnote 6, the statement there resolves this case in your favor, footnote 6. Now, the other side is going to say a lot of things about footnote 6, I think, that it's dicta, that it's mistaken, that it's wrong, that it should be ditched. You want to just take on footnote 6, because you win with footnote 6, but, you know, do we stick with that? We think footnote 6 is not dicta. We think it's actually quite essential to answering the question that Justice Jackson was asking. Why do we treat these two circumstances differently? And you have to remember, prior to Rockwell, this court had not addressed cases that were originally filed in federal court. So this court was trying to explain, we have 100 years where we do something different in the removal context. Why are we going to do something different here? And Justice Scalia was explaining the different policy concerns. So we don't think that's dicta. We actually think it is essential to the reasoning in that case. And even if you think it isn't a holding, it certainly is recognizing that this court has resolved the question in the removal context, going all the way back to it. And why is it correct? Go ahead. Okay. Assuming why is it correct? In other words, it does seem, as Justice Kagan's questions indicate, that the Rockwell above the line and the Rockwell footnote, you would think, would come out the same way under the text of the statute. So I guess, assuming the above the line part is correct, why does the text of the statute support footnote 6? So I think the text of the statute supports the removal jurisdiction in this case, not what happened in Rockwell. Right. So I think your answer is the part of Rockwell that's not in the footnote is shaky. That's correct, and that's what the Chamber of Commerce… The part in the footnote, you think that's solid. I think that's solid because the text of Section 1367 says there is supplemental jurisdiction unless Congress has expressly provided otherwise. Section C-3 makes clear that you don't have to have a federal question throughout the proceedings in order for there to continue to be supplemental jurisdiction. C-2 expressly addresses situations like this one where the federal law claims have fallen out. In that situation, the state law claims would substantially predominate. I think they're going to probably say something also like it was stray comments that weren't carefully considered, and you want to respond to that? I'm just previewing what they're likely to say. One thing I do want to emphasize here is this Court was thinking about this question in Cohill. If you go to the oral argument in Cohill, right around minute 5, Justice Scalia is asking the same questions that we're talking about today. So the Court wasn't somehow unaware of this question. You seem to be articulating the position in the oral argument, as I read it, that Judge Strass ultimately came to in the Eighth Circuit, but obviously by the time of Rockwell, Justice Scalia had not stuck with that. I think that's right, and I think it is important that this Court was aware of the question, continued to apply its precedent, its longstanding precedent in Cohill, and I don't think you can write Cohill, which is all about this is a doctrine of discretion. I don't think you can write Cohill if you think that the Court didn't have jurisdiction. Sotomayor, go ahead. Suppose a diversity case, I have a diversity case, I file it in State court, it's removed to Federal court, and once I'm in Federal court, I join a non-diverse party. Can the Federal court hold on to that case? So, no, Your Honor, and that is addressed specifically in 1367B. So there are circumstances, you know, for example, where there's a third-party defendant or dispensable plaintiff under Rule 20 that, you know, the Court may be able to, because it's not addressed in Section 1367B. Why should there be a different rule regarding parties and claims? So Congress thought very hard about this. This Court has long had two different lines of precedent, one for pendant claim jurisdiction and one for pendant party jurisdiction. It's taken a very broad view to pendant claim jurisdiction and very narrow view to pendant party jurisdiction. And Congress said, that's not what we want. We don't want Finley. We do want some limits. I think B tells you that A is so broadly written that if you don't have B, that there would be concerns about diversity jurisdiction questions, Your Honor. But Congress thought very carefully about this. And it made clear that there would continue to be supplemental jurisdiction, even when the federal claims dropped out of the case. If we thought that the Eighth Circuit's decision is right as a matter of first principle, what relevance, if any, would this line of Court of Appeals decisions have in our decision-making? I think it's very important here, because Congress is codifying precedent. It's codifying these Court of Appeals decisions in particular in C-1. It's very much aware of them. And the Court of Appeals decisions are reflecting this Court's decision in St. Paul-Mercury, in Coe Hill, and now Rockwell. This is incredibly well established. So I don't think the Court should ignore that that's what the Court of Appeals have been doing, and that they're doing it for a reason, because this is a doctrine of discretion. It's a matter for the district court to say, what are the fairness concerns? What are the comity concerns? What are the judicial efficiency concerns? Maybe the district court can dispose of the state law questions really easily, and the case has been going on for two years in the district court. It doesn't make sense to send that case back to state court. This goes back to a question that Justice Barrett asked. Usually when we apply this old soil rule, we're talking about a term of art in the statute about which there was a body of preexisting precedent. What term of art can you point to here that supports your argument? Sure. So if you look at C, the district courts may decline to exercise supplemental jurisdiction. That language comes directly from Coe Hill. It's not in Gibbs. That's the language the Court uses twice. And so when you're thinking about what did Congress intend to codify, when it comes to whether the district court can exercise discretion, I think you have to take into account what this Court held in Coe Hill. I also think, Your Honor, if you think that the text doesn't say anything, this Court has held that statutory silence implies ratification by Congress. I think you can apply that doctrine as well to reach the answer here. I think if you think that the text doesn't say anything, you're left with trying to figure out what rule to use in this instance that best coheres with the whole panoply of rules that we use in other contexts. And I think that on that account, you have a tough road to hoe. You have St. Paul, and that's the amount in controversy. But for the reasons that Justice Barrett said, the amount in controversy requirement has generally been thought of as sui generis because of the difficulty of figuring out when, how you're supposed to measure that. But otherwise, you know, I think that the rule basically is we look to the operative complaint. We look to the original complaint when the original complaint is operative, but once the complaint has been amended, we look to the amended complaint because that's the operative complaint. And that's why you can create diversity jurisdiction or destroy diversity jurisdiction by adding and removing parties. And it's also why you can, you know, add, it's also what explains Rockwell. And it also explains how you can add and remove federal claims to create or get rid of federal question jurisdiction. So you're asking for a very kind of unique rule where it's like, no, we don't look to the operative complaint. We look to this old complaint that has nothing to do with the case anymore. May I respond, Your Honor? Certainly. So I think it's very important here that this is a longstanding rule that really reflects the idea that Congress wanted district courts to make the decision. They wanted district courts to decide, is there gamesmanship going on here? Is there judicial efficiency concerns? Are there comedy concerns? And this rule that this Court is talking about would need to apply to all sorts of different circumstances, such as when the claims become moot, when the parties settle the claim, when the plaintiff amends the complaint. And when Congress drafted Section 1367C, what it wanted was to give district courts discretion. And that's a reflection of decades and decades of precedent, Your Honor. Thank you. Thank you, Counsel. Just a brief question. You complain about the forum manipulation problems this would create. I don't see how that's a problem here. They wanted, they started in state court. They want to go back to state court. They're not trying to manipulate anything. So we think that it is forum manipulation, particularly in this case where they waited almost two years to amend the complaint after they lose in the Eighth Circuit. We think that's a form of forum manipulation. We think there are much more extreme forms of forum manipulation. For example, where a plaintiff, you know, the district court says, I'm about to rule against you. That's what happened in three cases on page 16 of the yellow brief. And the plaintiff says, great, send me back to state court. And that's a very serious form of forum manipulation. But we agree, Your Honor, in many cases, the mine run of cases, you get to federal court, you immediately amend the complaint, the federal judge is going to send that back to state court. We're really talking about the more unique circumstances like this one where it's been going on for a long time, and Congress wanted district courts to consider different considerations. Thank you. Justice Thomas? Justice Sotomayor asked you about what happens when a judge dismisses some of the federal claims. And you responded to that. And she was referring to C-3, which only refers to the district court dismissing those claims. It says, but C-3 says nothing about the instance in which the party amends the complaint and eliminates the federal claims. Would you address that? Certainly. That's a really important point. So that is addressed in C-2. So in C-2, where there is no longer a federal claim, the state claim will substantially predominate. It could also fall under C-4, an exceptional circumstance. I would point out, Your Honor, that C is simply listing when district courts may decline to exercise supplemental jurisdiction. This court in ExxonMobil against Allapattah said, really the key question is, is it in the statute? And certainly amendments to the complaint is not in the statute, so we think that's sufficient. But if you want to look at the text of C-2, I think that also answers the question. But do you agree that when the district court dismisses the claim, it remains in the case? I agree, Your Honor, but that is also true of an amended complaint. You can appeal whether a complaint was properly amended. We cited the Lucente case in the Second Circuit that reinstates the original complaint on appeal. So if that's the test, we think that's met. Do we normally think of a complaint that's amended by the party to eliminate a federal claim as still having that claim? I think that's true of all these circumstances where the claim becomes moot, where the parties settle, where the plaintiff voluntarily amends, where the district court dismisses. Those claims, for the purposes of the party, aren't going to continue to be litigated. We think the important question here is, when do you evaluate whether there is an original federal question in the case? Under this Court's longstanding precedent, going all the way back to St. Paul Mercury, you look at the time of removal, Your Honor. So when does an amended complaint supersede the earlier complaint? Your Honor, we don't think that's the right question. The question isn't whether it supersedes the original complaint. The question is, at the time of removal, is there an original federal question in the case? We think that's what the phrase, in the action, is doing. If you look directly at Gibbs, which is where that language came from, Gibbs is saying what you need is the original claim and the supplemental claim to be in the same case. That's true regardless of whether the complaint is amended. That claim was filed in the same case. Justice Alito? When many courts of appeals have considered a question and they've all decided it the same way, that certainly requires very respectful consideration. They are very likely correct. But would you also recognize that there can be circumstances in which there can be sort of a snowball effect in busy courts of appeals, particularly on a certain category of issues, so that if a court of appeals decides a question one way, then the next one just latches onto that, and pretty soon courts of appeals confronting an issue are very likely to say, wow, if all these other circuits have gone this way, I'm not going to create a conflict in the circuits on this. I'm just going to go along with it. Do you think that's a dynamic that can occur in courts of appeals, and if so, should we take it into account? I think that's possible, Your Honor, but I think this is a pretty unique case. We've searched high and low, and the only two cases we found that went the other way was one district court case from 1915 and one district court case from 1940. That is overwhelming precedent in the courts of appeals, and if you look at cases like Boland's, which is a case that Justice Scalia cited in Rockwell from the Fifth Circuit, it very carefully explains the reasoning of why we treat these two circumstances differently. I think you also have to look at this Court's precedents, cases like International College of Surgeons, Rosado, Carlsbad, Osborne v. Haley. All of those cases are suggesting that this is a doctrine of discretion. So this Court has been giving the lower federal courts the same signal for many, many decades of this is how we're going to treat this situation, and we think that's what Congress codified in the text of Section 1367. Well, do you think that courts of appeals read our decisions differently than we may? I was on a court of appeals for 15 years. If I saw a strong dictum in a Supreme Court decision, I would very likely just salute and move on. But here, we have more of an obligation. It depends, Justice Sotomayor. Both when we're considering what we've written. We know how these things are written. We know how these split notes are written. Do we have liberty to read them a little bit differently? Of course, the Court has the liberty to read its footnotes how it would like. But I do think it is important to keep in mind here that the question is what did Congress intend? Congress enacted this statute in reaction to the Court's very narrow view of supplemental jurisdiction. In Finley, it adopted very broad language, and I think it would be very weird to think that Congress intended to abrogate Cohill silently without saying anything about it. And I think it would also be strange to treat the situation where the plaintiff amends the complaint differently than a situation where it becomes moot, where it drops out of the case for some other reason, such as settlement. I think then you'd have to get into the Eighth Circuit's decision between involuntary, involuntary amendments. Thank you. Thank you. Justice Sotomayor? I go back to Congress knew when to adopt or not adopt a particular circuit court reading, and it didn't do anything with 1367, but it did do with diversity to codify that. So I don't know how much the old soil counts. But let's go back to first principles. What's the justification for this plaintiff manipulation, correct? It's much broader than that, Your Honor. So judicial efficiency is a very important reason why Congress enacted the Gibbs principles into Section 1367. So a case may be pending for two or three years. The district court might be really familiar with it. It might be a really straightforward question of state law. In that situation — So how doesn't Rule 15 take care of that? It gives plaintiffs a narrow window to amend, and otherwise it needs to seek permission. So why didn't the district court simply deny permission here? This case was pending almost two years before the amendment was made, but it was still an amendment as of right in this case. So you can have an amendment — It wasn't within the window permitted by the rule. It was, Your Honor, because the case went up on appeal and came down. So there are situations like that. But there's also — leave to amend should be freely given under Rule 15. That's not really the kind of standard that takes into account these judicial efficiencies. Well, it certainly does. I mean, that's the entire purpose of the freedom of the power and discretion to amend. So I just think it's a matter of first principles. It's really — you have an amici with the Center for Litigation in Courts who supports your argument but says don't rely on that. And I think they make that point for a reason. It's not your strongest point, and then I don't understand why we should change all the other rules that respect an amended complaint as the complaint setting forth the claims and inaction. Your Honor, we think if you were to rule for the other side, that would be upsetting. A hundred years of precedent, every single court of appeals decisions, that would be changing the rules. All we ask this Court to do here is apply settled law. Justice Kagan. Justice Gorsuch. We've talked a lot about 1367, but I'm not sure we've paid much attention yet to 1447. And I can certainly see the argument that the operative complaint should be the one at the time of removal under the old version of 1447, which suggests that a case should be remanded if it was improvidently removed. That does seem to focus the Court's attention on the complaint at the time of removal. And I think a lot of the court of appeals kind of been operating under that kind of idea of the rule, but it's been amended. And it now reads that a case should be remanded if at any time it appears that the district court lacks subject matter jurisdiction, which, you know, just reading that, one might, and I'm sure we're going to hear this argument, so I wanted to give you a chance to respond to it before you sit down, that that focuses the Court's attention on the then operative complaint. Thoughts? Two responses, Your Honor. So I think it's important to keep in mind that the 1911 version of the statute, the predecessor of 1447, that was in effect during St. Paul and Mercury, had basically the same text as it did today. I grant you that. And then it went to was improvidently removed for a very long time, and now it's come back to looking more directly at the then operative complaint, doesn't it? So I think it is important that this Court reach the ruling that it did in St. Paul and Mercury under the old text. I think that suggests that it— I grant you that with respect to the amount in controversy, and we've been around that tree a few times. So putting aside that point, you got anything else you want to say about it? Certainly. So they didn't make that argument in the red brief because it doesn't answer the question. The question is whether the federal court has jurisdiction or not. We think that's answered at the time of removal, and this Court in the Wisconsin Department of Corrections case said that Section 1447 was merely procedural. It did not affect the district court's jurisdiction, so I think you would have to revisit that case in order to read 1447 here the way you suggest. Mr. Cavanaugh? I just want to make sure on the state of the law and maybe following up on Justice Kagan's question because you would think when you pick this up, if you were uninitiated, that there would be a standard rule. Look at the complaint at the time of filing or removal or look at the complaint at the time of amendment. But at least as I looked at everything, it's just a mess, right? There's just boxes everywhere where, you know, in the diversity context, destroying diversity almost always compels dismissal or remand, but reducing the amount in controversy or changing citizenship of a party almost never does, right? Is that correct? That's correct, Your Honor. Like Morgan's Heirs and St. Paul and Mercury on the one hand and Owen Equipment on the other. There's no logic connecting those things, at least as I see it. It's just rules out there without connective logic. There might be each box has its own little idiosyncratic policy considerations, but there's no connective rule, at least as I read it. Correct me if I'm wrong. I think you're right. Or the other side can correct me if I'm wrong, too. I think you're right, Your Honor, that there are different rules that apply in different circumstances, that they have different policy concerns or longstanding prudential concerns, and that this Court shouldn't go around disrupting those rules. There are lots of different rules that apply with respect to adding diverse parties. Sometimes you can do that. Sometimes you can't. You can add a nondiverse successor in interest, for example. So there's lots of different circumstances, and we simply ask the Court to apply settled law. We don't think the Court has to come up with a unifying theory for all these different areas of the law. Congress acted with an important reason here with respect to supplemental jurisdiction. It wanted to protect the defendant's right to remove, and I think that's why you see this broad text here, as well as judicial efficiency. By settled law, you mean footnote 6? You mean Coehill? What are you referring to there? You're right, Your Honor. So St. Paul-Mercury, Coehill, and Rockwell. There are also cases like Carlsbad where this Court expressly asked, is a Coehill remand, that's the phrase the Court used, is a Coehill remand discretionary? I don't think this Court could answer the question yes without having again decided this question. There are other cases like International College of Surgeons in Rosado that again emphasize that this is a discretionary question, and I don't think this Court should just depart from all of that precedent here. I don't think there's a good reason to, and this Court should, this is a statutory question. Stare decisis carries enhanced force in the statutory context, and that's why we've asked the Court to continue to apply settled law. Thank you. Justice Jackson? Just a couple of quick points. So you keep talking about protecting the defendant's prerogative of removal, but I thought there was also sort of basic principles about the plaintiff's prerogative to bring a case in state or federal court to be the master of their claims. And so what I don't understand is why the plaintiff has to be stuck with the jurisdictional consequences of claims they are no longer bringing. They've given up their ability to seek relief on the federal claims, and so it just seems odd to me, especially when our case law kind of generally links jurisdiction with the claim. You have to have jurisdiction for every claim. Those two concepts run together, and yet somehow they can drop claims and still be, in your view, subject to the jurisdictional consequences of that. That just seems discordant to me. So can you speak a little bit about that? It's a really important question, Your Honor, because what Congress was trying to do is take into account the right of plaintiffs to be the master of their complaint, but also the right of defendants to remove. And that's exactly what investing discretion— But Justice Gorsuch points to statutes that talk about remand. So even though the defendant has exercised its right of removal, there are circumstances in which that right is not given precedence. The case goes back to state court, right? That's exactly right. It's up to the district court to decide. And we think in the mine run of cases where you amend the complaint right after you remove, there's removal to federal court, that's going to go back to state court. What we're really talking about here are more unusual cases where it's been going on for a long time. There may be particular concerns. Can I just ask you about the text? Moving quickly because I'm mindful of the time. I don't understand how the question could possibly be whether or not there is original jurisdiction at the time of removal. Of course there is. That's why the case gets to be removed. I mean, there's no question there that does any work because you only get to remove it if there's original jurisdiction. So isn't the question really what happens when, after we've identified original jurisdiction and it's removed, the claims over which there were original jurisdiction drop out? Can supplemental jurisdiction be exercised when those original jurisdiction claims are no longer there? When we look at the text of 1367, I don't understand your argument that supplemental jurisdiction arises in that situation because A says in any civil action of which district courts have original jurisdiction, the district courts shall have supplemental jurisdiction. But in my scenario, original jurisdiction is gone. So how can you have supplemental jurisdiction in a situation like this? I think it's really important to go back to the first principles that this court was applying in Coehill. It was looking at St. Paul-Mercury, which holds that you have original jurisdiction at a particular time. And so once you get original jurisdiction, you continue to have supplemental jurisdiction. That's what the court held in Rosado. There, the original claim became moot. So wouldn't we expect it to say in which the district court had original or ever had original jurisdiction? It seems to be, in the present tense, saying that you have to have original jurisdiction in order to exercise supplemental. And I think that's because you have decades and decades of precedent saying that in a removal context, you look at whether there's jurisdiction at the time of removal. At that time, the district court has original jurisdiction. And then the question is, will it continue to have supplemental jurisdiction? The text here is framed in a forward-looking future tense. We think shall have does cover the situation where there's ongoing supplemental jurisdiction. Thank you. Thank you, counsel. Mr. Keller. Mr. Chief Justice, and may it please the court. The life of the law has not been logic. It has been experience. And experience should have taught us by now that a suit arises under the law that creates the cause of action. That should be the definitive test for arising under jurisdiction for at least three reasons. It's the most faithful to the text. It avoids serious constitutional problems. And it will save decades of pointless litigation over jurisdiction. Now, if you're not yet ready to reembrace American Well Works, and it sounds like you might not be, I suspect that stare decisis does a fair bit of work, in which case stare decisis supplies an easy alternative path to affirm. This case is Merrill Dow, but for pets, not people. And while I take a backseat to nobody in my love of our four-legged friends, I am confident Congress believed that misbranded human product was a more substantial federal issue than misbranded pet food. If we turn to which complaint controls the Eighth Circuit again should be affirmed. My friend and I crucially agree. The text of 1367 is dispositive here. And remarkably, we also agree. If this case were originally in federal court, it must be dismissed. Why? Because by amending out all of the federal issues, they're no longer in the action. If that's what the text of 1367 means for an original case, how can the exact same words take on a different meaning with removal? Despite my friend's professed commitment to textualism, she has no choice but to flee to public policy. We can't have these mischievous plaintiff's lawyers shopping around for their judges, we're told. Now, that concern is not happening in the real world. And my friend's solution wouldn't solve the problem, even if it were. But none of that matters. This court has said many times that text trumps policy. You merely need to say so once again in order to affirm. I welcome your questions. Mr. Keller, would you spend a bit more time on the application of 1367 and how it supports your argument? Of course, Your Honor. So I think the plain text controls. We agree about that. The present tense verbs, I think, are intended to indicate that there is jurisdiction presently. We focused on the word have with the colloquy with Justice Jackson. Justice Jackson, I would also focus on the word are. There has to be a relationship between the other claims, the state law claims, that are related to claims in the action. The federal claims that are within the court's original jurisdiction. If we amend out those federal claims, they're no longer in the action, there's no relationship, and so there's no supplemental jurisdiction. That's 1367A. That's the requirement to establish supplemental jurisdiction. You don't get to the exceptions in B or C unless you establish jurisdiction under A. I think not logic but experience you lose, Mr. Keller, because the experience cuts the other way. I mean, just the ‑‑ this is all ‑‑ until the Eighth Circuit came along, the position of the petitioners has always been understood, assumed. Everybody thought that that was the rule. And it was a rule which really has no adverse consequences because everybody remands these cases anyway. In 99% of the cases, these ‑‑ you know, there's a remand. So, like, what harm is this rule doing? And this rule has existed in every single circuit court for lo these many years. Yeah, so I respectfully disagree. The master principle that I think governs in every context except the amount in controversy is that the amended complaint controls. If you amend a complaint in state court to add a federal claim ‑‑ So, I basically agree with you. I mean, I basically agree with you on that and not with Justice Kavanaugh. Justice Kavanaugh says it's all arbitrary. I don't think it's arbitrary. I think some of the cases that he was talking about is when facts in the world change. But when we're not talking about facts in the world, when we're talking about allegations, I think that the structure is the way you describe it, that we look to the operative complaint, the amended complaint, except in the amount in controversy area where there are sort of special considerations. So, I kind of agree with you that if we were creating a system where all the rules cohered, yours is the better rule. But I think on the other side of the table is, look, we have this anomalous rule, but this anomalous rule has been accepted by everybody for many, many years, and it does no harm anyway since most of these cases are remanded back to state court where they belong. Yeah, a couple of responses to that, Justice Kagan. First of all, I don't think that we, meaning this court, has ever embraced that rule. It's true that the lower courts deserve respectful consideration, but a lot of these cases predate binding statutory text, so I'm not sure that that's dispositive. Also, I would respectfully submit that you're the supervisory court that's most important in our Article III system, and when you're hearing a question for the first time, you ought to adjudicate it correctly, notwithstanding the respectful consideration that you would give to the lower courts. And if you've determined, as it sounds like you have, that from first principles I'm right, the fact that lower courts that obviously can't bind this one got it wrong, I don't think is a reason to just say let's go along to get along. And I also think there are – Counselor, you're suggesting that this is kind of the first time the courts considered the question. I understand that, but you do have Cohill and the Rockwell footnote to deal with, and I haven't heard a word about those yet. Well, here it comes, Justice Gorsuch. I can't wait. As Justice Kavanaugh previewed, I don't think that footnote 6 in Rockwell is anywhere near the ratio dissidentity of the opinion. Justice Scalia was as capable as anyone of making a stray remark. He didn't even consider the statutory text of 1367, which both my friend and I agree is dispositive. And the easiest way to tell that it's dicta is if you cover up footnote 6, would it make any difference for the adjudication of the rights and responsibilities of the parties? Obviously not. Rockwell would have come out the exact same way, and the exact same outcome and judgment would have occurred. We have a lot of things and opinions that you can make that same comment about that we follow, just to put that out there. Sorry to interrupt. And I agree with you, Justice Kavanaugh. The fact that it's dicta doesn't mean that you toss it out the window. I think what it means is you take it from where— No, that we don't even treat it as dicta, but keep going. Well, it's up to you to decide whether or not you would treat it as dicta here. I think it's pretty ill-considered, and it doesn't get into the fact that it creates the inconsistency that we've been talking about, where the exact same text means one thing for an original case and something else for a removed case. I don't think that's the sort of thing that Justice Scalia would have countenanced, given his commitment to textualism. Counsel, your friend on the other side—will you finish? Yeah, thank you. Your friend on the other side says that this would wreak havoc with the Class Action Fairness Act and remove cases. Do you want to address that? I'm not sure that I understand that point, Your Honor. I don't see why it would wreak any havoc. CAFA makes it a lot easier to remove cases into federal court. So in the Mine Run case, they're going to have no difficulty. The difficulty that they face here is that you have no diversity of any kind. CAFA obviously eliminates complete diversity and goes to minimal diversity as the standard, but that's a relatively unusual circumstance. Oftentimes, plaintiffs are trying to seek a nationwide class or something broader, so I don't think it's going to wreak havoc because the incentives are still going to be there when there's widespread harm for plaintiffs to pursue classes that include citizens from many different states. Counsel, we have had cases where we came out the other way than every court of appeals had come out, right? Yes, you have, Mr. Chief Justice. Like what? I think there are—that's a great question. And none spring to mind, but I am positive that I could find some. Central bank? Well, I mean, it's pretty bold to take the position without knowing one. Fair. Was that the case in Chadha? INS versus Chadha? Yes. I don't know. I apologize. Somebody will check. Gosh, I'm not sure which way that cuts. I'm not sure that's true. I just have it in the back of my mind. I'll just go back to the state of the law. I certainly didn't use the word arbitrary. It's just that each bucket has developed based on its own idiosyncratic considerations, and you can't necessarily get a through line of look at the time of filing or the time of amendment, at least as I look at them. And it's beyond just amount of controversy. It's a change in citizenship as well. Do you agree with that on a change in citizenship? I agree, obviously, that the change in citizenship rule has a long pedigree. It goes back to 1824. I don't agree that that's about which complaint controls. That's about real-world facts. So if you want to amend a complaint to say, I made a mistake. I said that I was from Florida and the defendant was from Illinois, but I realized that the defendant actually moved to Florida two years ago, so we're both from Florida. The amended complaint would control there. And then on footnote six, let me just – I know you're going to disagree that it controls. If it does control, I mean, if it is binding, it goes against you in this case, correct? Of course. And then I win under Grable or Merrill Dow. Right. You know, I just wonder – so you look at footnote six. To me, footnote six is like somebody said, hey, but how about Cohill? And then they said, oh, yeah, Cohill, so we have to put in footnote six. And so the fact that footnote six is there suggests a certain kind of reading of Cohill. And, you know, what Cohill was about was this question of do you have to dismiss a case or can you remand the case back to the state court? But Cohill's logic does cut against you, I think, fairly heavily here. Because as I read Cohill, what it does is say something like this. You know, the supplemental jurisdiction business, ever since Gibbs, we've understood it as a completely discretionary area of jurisdiction. You can keep the case. You can dismiss the case. If you can keep the case and you can dismiss the case, surely you should be able to remand the case as well. And that's the essential logic of Cohill. It's like everything is discretionary in this area. Why shouldn't this be too? But that logic really does cut against you, because it suggests that everything is discretionary in this area, including keeping the case. Yeah, a couple of responses to that, Justice Kagan. Whatever amount of discretion I think existed in the Cohill era, I don't think can continue through binding statutory tax. So we're no longer operating in a common law realm. We're operating in a realm where Congress chose to act. We can debate whether Congress chose to codify whatever the common law rules were, hook, line, and sinker. I would suggest from Alipata that it codified binding statutory tax, then we should follow the tax. So I don't think we can just go with freewheeling old principles now that Congress — Well, how about if I think that the text doesn't really help either of you, that, you know, you're saying text, you're saying text, and, in fact, neither of you really has a very strong argument about text, and we have to decide this case on other grounds. So the other grounds I think would be the master principle that we talked about, that the operative complaint almost always controls. The only context that I'm aware of where it doesn't control is the amount in controversy. That, by the way, was also codified through binding tax. That's 1446. I agree that it goes back longer to cases like St. Paul-Mercury. As an aside, I actually think that's a completely defensible interpretation of the old statutory tax precisely because Congress understands it doesn't want to blur the line between jurisdictional facts and the merits. We don't want to create the Judge Posner problem where a plaintiff comes into court and loses or wins an amount that's less than the amount in controversy, and now we have to remand for lack of jurisdiction. So I understand what you just said to mean that you would win this case even if 1367 had never been enacted. I think that I would win this case if 1367 hadn't been enacted and we were still in a more common law regime and this issue were squarely presented to the court for the first time. Cohill had this issue obliquely presented. Yes, there was an amended complaint, but the party presentation rule should matter. No one made that fact relevant for the Court's consideration. You could have considered it sua sponte because it went to jurisdiction, but no one did. And this Court has pointed out before that drive-by jurisdictional rulings don't have any precedential effect. The reason you had to say that is sometimes, even though you would like to avoid it, you issue drive-by jurisdictional rulings. Why would we say Cohill addressed this? As I understand it, the question there was whether to remand or dismiss, and this issue wasn't presented to the Court at all. I completely agree with it. It was not presented to the Court. The facts of Cohill, though, I have to say in the spirit of candor, was that there was an amended complaint and it dropped the federal claim. And then there was the question of whether there's discretion to remand versus just discretion to dismiss for lack of continuing jurisdiction. And do you have any way to rationalize St. Paul Mercury other than it's been codified now? No, I do think that I can rationalize St. Paul Mercury. As I was saying just a moment ago, I do think that the amount in controversy, even before Congress said in 1446 we have to look to the initial pleading, going back to cases like St. Paul Mercury, it is reasonable to read the words amount in controversy to mean theoretically possible to be recovered. It doesn't matter what happens after you file your lawsuit. And so if the plaintiff pleads in an initial complaint consistent with Rule 11 or whatever the equivalent was in 1938, I'm above the jurisdictional amount in controversy, that's showing that it's theoretically possible to recover that amount in good faith, and that's good enough for the statutory jurisdictional requirement that Congress added on to Article III. Mr. Keller, in thinking about, you know, Justice Kavanaugh was talking about the different boxes and some of the inconsistencies, one way I've been thinking about this is I think it's been true for a very long time, back to Strawbridge v. Curtis and the complete diversity requirement, you know, talking about Motley and the well-pleaded complaint rule, that the court for a very long time exercised a pretty free hand in interpreting 1331 and 1332. That language is identical to Article III, but yet the court interpreted it to mean something different. And I think that in the Gibbs regime, pre-1367, the court was exercising a pretty free hand in articulating the contours of pendant jurisdiction and ancillary jurisdiction before Congress controlled it. Can you think, I mean, I think a lot of this case seems to kind of come down to, is that just the way we've been treating jurisdictional statutes and do we keep it up with 1367? Or in 1367, because in Finley the court kind of said, nope, look, Congress, there need to be clear jurisdictional rules, expressly invited Congress to address it, which Congress did. Would you say, do you think it's fair to say, or can you think of a counterexample that in 1367, when it comes to supplemental jurisdiction, the court has tightened its belt and isn't being as freewheeling? Or can you think of other examples where the court, this court, has done kind of what the Court of Appeals seemed to have continued to do in 1367, which is maybe make a little bit more jurisdictional policy than was set out in the text? Yeah, an important question, Justice Barrett. I think I would describe the history a little differently. I wouldn't describe it as freewheeling. I would say it all points in one direction. The court construed jurisdictional statutes more narrowly than Article III. So that's certainly true with Strawbridge v. Curtis. We know that there's not a complete diversity requirement because of CAFA. It's the same thing with 1331. Justice Thomas noted this in Grable. From the very beginning of the Jurisdiction and Removal Act of 1875, this court almost immediately construed the words arising under to be not coextensive with Article III. Gibbs is a counterexample. And the court infinitely, I think, gently criticized Gibbs for operating without a statute. It did invite Congress to act. Congress has now acted. And so having taken up this court's invitation to supply positive law codifying this entire area, I think you should stick to your normal statutory interpretation principles. And if you want to put a thumb on the scale, it should be against jurisdiction, consistent with tradition. Setting aside 1367, going back to Justice Alito's question, I'm wondering whether the sort of core principles basis for your position is basically the plaintiff is the master of the complaint. They get to plead the claims. For federal question jurisdiction, the claims matter. That is, jurisdiction is based on the claims that the plaintiff pleads. If the claims are amended, the federal court can be divested of jurisdiction, and removal really has no bearing on the scope of jurisdiction, or at least that's never been established, that how it comes to federal court matters with respect to an amended complaint. Is that roughly where you're coming from with the principles that would underlie this, even setting aside the statute? Yes, that syllogism is perfect. If there are no further questions, I'm happy to go to Siri Adams. Justice Thomas? Justice Kavanaugh? Thank you, Counsel. Thank you, Your Honor. Rebuttal? Thank you, Your Honor. As Justice Kagan says, under experience, respondents lose. To rule for respondents on the question presented, this court would need to overrule or distinguish away St. Paul Mercury, Coehill, Rockwell, Gibbs, Carlsbad, Rosado, Power X, Osborne v. Haley, International College of Surgeons, and Wisconsin Department of Corrections. That's ten decisions of this court on top of dozens and dozens of court of appeals decisions that have consistently and unanimously supported petitioner's petition. Indeed, even respondents agreed that the district court could exercise supplemental jurisdiction. They said it in their amended complaint. It's only until the Eighth Circuit invited briefing on this that they switched positions. And I think it's quite telling here that the Eighth Circuit reached the decision it did by apparently missing all of the footnotes that it should have read, including in Rockwell, but also in the Second Circuit and the Eleventh Circuit decisions that it cited. So I think that's the reason we're here today. As Justice Barrett asked, ruling for respondents would also call into question the rule that applies in CAFA cases. The court of appeals have said, you know, if you get into federal court on removal in a CAFA case, the plaintiff immediately amends to try to get rid of all the class action allegations, the courts of appeals have said. That's a question of discretion for the district court. Maybe the district court will send a lot of those cases back to state court, but maybe when the case has been going on for two years and the class is about to get certified, that's a situation in which the district court may say, okay, I'm going to keep this case here in federal court. It would also call into question the court's longstanding rules that amendments to the amount in controversy do not affect jurisdiction. And what do respondents want instead? So instead of an approach that gives district courts discretion in every case to determine what makes sense as a matter of judicial economy, convenience, fairness, and comedy, they want an inflexible rule that gives district courts no choice and that would subject the defendant's right to removal to the plaintiff's caprice. As the Chief's questions suggest, where this court decides to overrule every single court of appeals, it should have a really good reason, and there isn't a really good reason here to upset a longstanding jurisdictional rule that has worked just fine for a century. The Eighth Circuit simply got it wrong, and this court should vacate the decision below. Thank you. Thank you. The case is submitted.